UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ALVARO LEON RAMOS RAMIREZ,

Petitioner,

v.

KEN GENALO, New York Field Office
Director for U.S. Immigration and Customs
Enforcement; TODD LYONS, Director, U.S.
Immigration and Customs Enforcement;
MARKWAYNE MULLIN, Secretary of the
U.S. Department of Homeland Security;
TODD BLANCHE, Acting Attorney General
of the United States; RAUL MALDONADO,
JR., Warden, Metropolitan Detention Center,

Respondents.

**MEMORANDUM & ORDER**
26-CV-3229 (HG)

**HECTOR GONZALEZ**, United States District Judge:

On May 7, 2026, U.S. Immigration and Customs Enforcement ("ICE") arrested Petitioner

Alvaro Leonel Ramos Ramirez in Carmel, New York, in front of his home.  Petitioner was

ultimately transferred to the Metropolitan Detention Center in Brooklyn, where he remains

detained.  He now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  ECF No. 1.[1]

For the reasons that follow, his Petition is DENIED.

---

[1]     Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits
all internal quotation marks, alteration marks, emphases, footnotes, and citations.  The Court
refers to the pages assigned by the Electronic Case Files system ("ECF").

<u>**BACKGROUND**</u>[2]

Petitioner is a citizen of Guatemala who entered the United States without inspection or admission in or about September 2017. *See* ECF No. 1 ¶¶ 1, 4.

On the morning of May 7, 2026, ICE officers arrested Petitioner outside his home. *Id.* ¶¶ 10–13. A few weeks later, on May 29, 2026, Petitioner initiated this action by filing a petition for a writ of habeas corpus. *See generally id.* That same day, the Court issued an Order directing the government to show cause "why the petition should not be granted, and why Respondents should not be ordered to immediately release Petitioner from detention, in light of the Second Circuit's holding in *Cunha v. Freden*, --- F. 4th. ----, 2026 WL 1146044, at *23 (2d Cir. Apr. 28, 2026)," and directing the government to "address whether Petitioner is being detained pursuant to 8 U.S.C. § 1225 or § 1226." *See* May 29, 2026, Order to Show Cause.

The government filed its response on June 2, 2026, *see* ECF No. 6 ("First Response"), in which it indicated that: (1) "[o]n November 19, 2023, Petitioner was arrested by the Westchester County Department of Public Safety," charged with multiple offenses for driving under the influence, and, ultimately, in September 2024, "plead guilty to Aggravated DWI: Per Se-BAC .18 Of 1% Or More Alcohol In Blood-No Priors under 1192 SUB 2-AA"; (2) on "January 1, 2026, the Carmel Town Police Department arrested Petitioner and he was charged with Assault 3d Degree . . . Endangering The Welfare Of A Child . . . and Harrassment-2d Degree"; (3) the January 2026 charges "no longer appear on the Petitioner's Criminal History Record"; (4) "On March 1, 2026, the Carmel Police Department[] referred Petitioner to ICE"; (5) "[o]n March 3, 2026, ICE issued Petitioner a Form I-200, Warrant for Arrest of Alien ('I-200'), which stated

---

[2] The Court relies on evidence submitted by the parties in outlining the facts relevant to this Order. The facts recited here are undisputed unless otherwise noted. *See O.F.B. v. Maldonado*, 810 F. Supp. 3d 394, 398 n.2 (E.D.N.Y. 2025).

that Petitioner would be taken into custody as authorized by INA § 236 and § 287." ECF No. 6 at 1–2. The government also maintained that: (6) "Petitioner is properly being detained pursuant to § 1226(a), and his remedy, if any, [is] administrative"; and (7) on the day ICE arrested Petitioner, it "completed a custody determination and determined that Petitioner had not established that he did not pose a danger to persons or property based on his prior conviction." *Id.* at 2.

Petitioner filed his reply on June 8, 2026. *See* ECF No. 7 ("First Reply"). There, he argued that: (1) the I-200 was invalid because it "was predicated on a charging document that did not exist when the warrant was issued"; (2) the initial custody determination "was pro forma, not individualized"; and (3) the government "omits the precise information necessary to verify that Petitioner received the notice in a language he understood." *See id.* at 2–6.

Based on Petitioner's allegations, the Court issued a second Order to Show Cause that directed the government to:

> show cause as to why issuing the I-200 (dated March 3, 2026) before the Notice to Appear ('NTA') (dated May 7, 2026) is procedurally proper in this case in light of Judge Bulsara's decisions in *Gopie v. Lyons*, No. 25-cv-5229, 2025 WL 3167130 (E.D.N.Y. Nov. 13, 2025), and *Parada Cruz v. Mullin*, Nos. 26-cv-1110, 26-cv-1122, 2026 WL 1027441 (E.D.N.Y. Apr. 16, 2026).

June 9, 2026, Order to Show Cause. The Court also directed the government to address the arguments Petitioner raised in his Reply. *See id.* (quoting ECF No. 7 at 2–6).

The government filed its response to that Order on June 12, 2026. *See* ECF No. 8 ("Second Response"). There, the government stated "that the [Immigration and Nationality Act] and applicable regulations do not require an NTA to be issued before an I-200 is issued, [because] the regulations contemplate that an NTA can issue 'at the time of' an arrest." *Id.* at 3. The government also represented that it had probable cause to arrest Petitioner because of two independent reasons, *i.e.*, "the execution of a charging document to initiate removal proceedings

against the subject," and "biometric confirmation of the subjects' identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the subject either lacks immigration status or notwithstanding such status is [removable] under U.S. immigration law." *Id.* at 4 (quoting ECF No. 6-2). It noted that—the first reason, concerning "execution of a charging document"—was erroneous, but that, "[a]t the time," the officer "expected that the NTA would be issued that day." *Id.* at 4. The government also asserts that "[t]he fact that the NTA was not issued until the date of arrest and thus the first box on the I-200 did not apply does not invalidate the probable cause [the officer] had at the time he issued the arrest warrant or the arrest warrant itself." *Id.*

Later that day, Petitioner filed his reply to the government's Second Response. *See* ECF No. 9 ("Second Reply"). There, Petitioner reiterates his argument that the timing of the NTA and I-200 render his arrest "procedurally defective," and he argues, that the I-200 was "issued on a false premise." *Id.* at 1–2. Petitioner takes particular issue with the fact that the officer who completed the arrest warrant erroneously determined that probable cause existed based on the execution of an NTA. *See id.* at 3. Specifically, he argues that the erroneous rationale negates the validity of the other reason provided and, therefore, renders the entire warrant defective. *See id.*

## LEGAL STANDARD

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 562 U.S. 86, 91 (2011); *see also Ozturk v. Hyde*, 136 F.4th 382, 393 (2d Cir. 2025). A petition for a writ of habeas corpus under Section 2241, "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320

4

F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-cv-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

Particularly relevant here is the Second Circuit's recent decision in *Cunha*, 2026 WL 1146044. There, the Circuit held that Section 1226(a), not Section 1225(b)(2)(A), applies to noncitizens like Petitioner who entered the United States without inspection and admission and were not apprehended at or near the border at the time of entry. *Cunha*, 2026 WL 1146044, at *2.

Regardless of the statutory basis for detention, *Mathews v. Eldridge*, 424 U.S. 319 (1976), sets forth the test for determining whether ICE's detention of Petitioner violates his due process rights. *See Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (applying the *Mathews* test in the context of civil immigration confinement). Under that test, the Court must balance: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Petitioner seeks habeas release based on a host of reasons, but his primary argument concerns the government's process with respect to the warrant (Form I-200) used to effectuate his arrest and the corresponding NTA. Specifically, he argues that: (1) because the warrant was issued before the NTA, he did not receive due process; and (2) the government cannot cure the initial defects by "reconstruct[ing]" its rationale for probable cause. ECF No. 9 at 3; *see also* ECF No. 7 at 2–3. In Petitioner's view, the government's conduct has resulted in a "defect" that "is procedural, constitutional, and dispositive." *See* ECF No. 9 at 6. Petitioner also argues that the Petitioner's initial custody determination was inadequate. *See* ECF No. 7 at 3–5.

The Court addresses Petitioner's arguments about the timing and sufficiency of the I-200 and NTA before it turns to his argument concerning the adequacy of the initial custody determination.

## I.    The I-200 and NTA

The government concedes that one of its bases for determining that there was probable cause to believe Petitioner was removable was erroneous, but it asserts that at the time the I-200 was issued, the officer "expected that the NTA would be issued that day." ECF No. 8 at 4. The government also asserts that "[t]he fact that the NTA was not issued until the date of arrest and thus the first box on the I-200 did not apply does not invalidate the probable cause [the officer] had at the time he issued the arrest warrant or the arrest warrant itself." *Id.* It relies on the fact that probable cause was not based only on the officer's expectation that an NTA was imminent, but also on the fact that the I-200 was "based on the Carmel Police Department referral and record checks," that Petitioner "had entered the United States at an unknown date and location," and that he "did not appear to have lawful status or any pending immigration applications with

the U.S. Customs and Immigration Services." *Id.* Stated otherwise, the government's argument boils down to the following: even though one of the reasons for determining that probable cause existed was, in fact, erroneous, that does not automatically invalidate the other reason provided and does not invalidate the entire warrant. *See* ECF No. 8 at 3–4. The Court agrees.

First, Petitioner's arguments about the sequence of the I-200 and NTA are unavailing because they do not dispute that the government issued an NTA on the day he was arrested and processed. Indeed, 8 C.F.R. § 236.1 provides, in relevant part, that "[a]t the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest." 8 C.F.R. § 236.1(b)(1). In other words, "the regulations require that removal proceedings are pending or at least that a Notice to Appear was served at the time of arrest." *See Aparicio v. Genalo*, No. 26-cv-1411, 2026 WL 698872, at *5 (E.D.N.Y. Mar. 12, 2026). Here, the record reflects that the NTA was served on Petitioner at the time he was processed in connection with the I-200. *See* ECF No. 6-2 at 2 (Form I-200 for Petitioner indicating it was served on May 7, 2026); ECF No. 6-4 at 4 (NTA for Petitioner indicating it was served on May 7, 2026). There is no defect in that process.

Second, Petitioner's arguments that the government "reconstruct[ed]" its reason for finding probable cause here are similarly unavailing. Petitioner's arguments focus on the sufficiency of the first reason for the government's determination that probable cause existed, and although he is correct that the NTA did not issue until later, Petitioner fails to refute the sufficiency of the second reason the government provided—that it had "biometric confirmation" of the Petitioner and record confirmation that he either lacked immigration status or was otherwise "removable under U.S. immigration law." *See* ECF No. 6-2 at 2; *see also* ECF No. 8

7

at 4 (discussing that ICE's information was based on "the Carmel Police Department['s] referral and record checks"). Simply put, the government is not reconstructing a basis for probable cause, it is relying on the other, independent basis it indicated at the time the I-200 was issued. *See* ECF No. 6-2 (indicating two reasons for determining that "there is probable cause to believe that [Petitioner] is removable from the United States"). Moreover, it is clear that the motivating force behind Petitioner's arrest and detention was the Carmel Police Department's referral to ICE. *See* ECF No. 8 at 4. Without any challenge to the sufficiency of those grounds, Petitioner fails to contest a valid basis for probable cause that the government provided from the outset. And, because the officer's error concerning the timing of the NTA is not enough to independently render the warrant invalid, Petitioner fails to provide a sufficient basis for the Court to determine that the entirety of the I-200 is invalid.

Accordingly, because the sequence of the NTA and I-200 is procedurally proper under the applicable regulations and the government had sufficient probable cause to arrest Petitioner, the Court concludes that Petitioner's arrest was valid.

## II. The Initial Custody Determination

The Court also concludes that Petitioner's initial custody determination was valid. The government states that "ICE conducted an initial custody determination . . . [and] elected to detain Petitioner after determining that he had not established that he does not pose a danger to persons or property based on his conviction of aggravated driving while intoxicated." ECF No. 6 at 3–4. The government also argues that "[o]nce ICE make[s] the individualized custody determination," the Court is "jurisdictionally bar[red] [] from reviewing that determination," under 8 U.S.C. § 1226(e). *Id.* at 3.

8

As a preliminary matter, Section 1226(e) does not bar the Court from "assess[ing] whether and how correct procedures were applied at all . . . and ultimately, whether [Petitioner]'s detention comports with due process." *See Pastrana-Beltran v. Mullin*, No. 26-cv-2657, 2026 WL 1398609, at *3 (E.D.N.Y. May 19, 2026) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001)). However, the Court has assessed the relevant procedures applied here and concluded that Petitioner's arrest comports with due process. *See supra* Part I. It also concludes, based on the available record, that Petitioner's initial custody determination comports with due process. And, although Petitioner originally asked the Court to review and evaluate the factors the government considered in its initial custody determination, *see* ECF No. 6 at 4–5, he explicitly abandons any such request in his Second Reply, *see* ECF No. 9 at 3 ("Petitioner does not ask the Court to reweigh danger or flight risk.").

Thus, even if Petitioner had not abandoned his argument, ICE's procedurally proper, discretionary judgment about Petitioner's danger to the community "shall not be subject to review," and the Court may not set it aside. *See* 8 U.S.C. § 1226(e).

## CONCLUSION

For these reasons, Petitioner's arrest and detention is consistent with the Due Process Clause of the Fifth Amendment, and his Petition for a writ of habeas corpus, ECF No. 1, is DENIED.

For the avoidance of doubt, nothing in this Order shall be construed as a determination of Petitioner's right to seek custodial redetermination before an Immigration Judge ("IJ") or an individualized bond hearing before an IJ, where the IJ will meaningfully consider alternatives to detention and Petitioner's ability to pay if a monetary bond is set, and where the government will have the burden of showing by clear and convincing evidence that Petitioner is a danger to the

9

community or a flight risk.  *See J.C.G. v. Genalo*, No. 24-cv-08755, 2025 WL 88831, at *7 (S.D.N.Y. Jan. 14, 2025) (collecting cases where courts ordered that the government bear the burden of demonstrating by clear and convincing evidence that discretionary detention was justified); *see also Mendoza Raymundo v. Almodovar*, No. 26-cv-02304, 2026 WL 1480372, at *5 (E.D.N.Y. May 27, 2026) (same).

The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close the case.

SO ORDERED.

*/s/ Hector Gonzalez*
  HECTOR GONZALEZ
  United States District Judge

Dated:  Brooklyn, New York
        June 24, 2026